**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| CLAUDIA MANLEY, and NOEL MANLEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 15-cv-07499 |
| | ) | |
| DR. BRUCE LAW, and HINSDALE TOWNSHIP HIGH SCHOOL DISTRICT 86, | ) | Judge Edmond E. Chang |
| | ) | |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | |

**VERIFIED ANSWER TO PLAINTIFFS' AMENDED COMPLAINT**
**FOR DECLARATORY JUDGMENT AND OTHER RELIEF AS APPROPRIATE**

Defendants, DR. BRUCE LAW and the BOARD OF EDUCATION OF HINSDALE TOWNSHIP HIGH SCHOOL DISTRICT 86, through their attorneys, Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, submit their Verified Answer to Plaintiffs' Verified Amended Complaint:

**GENERAL ALLEGATIONS**

1.     Plaintiff Claudia Manley ("Claudia") is a resident of Darien, Illinois, and a Member of the District 86 Board of Education.  She served a Chairperson of the District 86 Policy Committee, a Board of Education standing committee, until May 4, 2015.

**ANSWER:     Defendants admit the allegations in Paragraph 1 of the Amended Complaint.**

2.     Plaintiff Noel Manley ("Noel") is a resident of Darien, Illinois, and married to Claudia (Noel and Claudia, as a couple, are hereinafter "the Manleys").

**ANSWER**:     **Defendants admit the allegations in Paragraph 2 of the Amended Complaint.**

3. Defendant Dr. Bruce Law (hereinafter "Dr. Law") is a resident of DuPage County and employed in Hinsdale, Illinois as Superintendent of Schools for District 86. His principal place of business is at 5500 South Grant Street in Hinsdale, Illinois.

**ANSWER**: **Defendants admit the allegations in Paragraph 3 of the Amended Complaint.**

4. Defendant District 86 is a school district organized pursuant to the Illinois School Code, headquartered at 5500 South Grant Street in Hinsdale, Illinois.

**ANSWER**: **Defendants admit the allegations in Paragraph 4 of the Amended Complaint.**

5. Membership on the District 86 School Board is an elected office. Three Members' terms expired in May 2015, and election of three Members took place April 7, 2015. Six Candidates qualified for inclusion on the official ballot, and they split into two slates of three, each with a duly registered Political Action Committee (PAC). In answer to the original Verified Complaint, Defendants said, "the slate of candidates supported by the Plaintiffs failed to win any seats on the School Board in the April 7 election, and it appears that Plaintiff Claudia Manley will no longer be a member of a majority slate controlling the School Board, but instead will be a member of a 2-person minority after new members are sworn in on the evening of May 4, 2015." Plaintiffs agree and adopt Defendants' statement.

**ANSWER**: **Defendants admit the allegations in Paragraph 5 of the Amended Complaint.**

6. One slate, calling itself the Education First slate, printed campaign fliers/leaflets, etc. supporting the three candidates of its choice.

**ANSWER**: **Defendants admit the allegations in Paragraph 6 of the Amended Complaint.**

7. On Thursday evening March 12, 2015, two individuals (not named in this lawsuit, hereinafter "the leafleters") entered upon District 86 property (viz., Hinsdale South High School) for the purpose of distributing those fliers to people entering the building for a dramatic

presentation ("the Spring Play"). They positioned themselves about 30-50 feet north of the building's north entrance, and given the restrictions of the entrance area, were able to make individual contact with anyone entering.

**ANSWER:    Defendants admit the allegations in Paragraph 7 of the Amended Complaint. Answering further, Defendants state that one of the leafleters was a 17-year old student in the District, that the leafleters were distributing fliers in support of School Board candidates who opposed Ms. Manley's allies in the upcoming School Board election, and that, upon information and belief, the leafleters were present for the purpose of informing the voting population entering the high school, not just those for the Spring Play.**

8.    The Manleys' daughter played a role in the Spring Play, and plaintiffs parked their car in the north lot on the property, and walked south toward the building entrance. Upon approaching, they noticed the individuals distributing campaign fliers (hereinafter "the leafleters").

**ANSWER:    Defendants admit that Plaintiffs' daughter played a role in the Spring Play. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 8 of the Amended Complaint.**

9.    District 86 Policy 4:20 provides, in relevant part:

> **Advertising and Sponsorships**
> All advertising and sponsorships, including commercial advertising agreements and commercial sponsorships, may be permitted only with Board approval on a case-by-case basis.
>
> *            *            *
>
> General Advertising Provisions
>
> *            *            *

> f. Advertisements that promote any religious or political organizations.
>
> g. Campaign materials from candidates and political parties.

[Underlining and italics in original.] The policy is published at http://www.hinsdale86.org/sb/bp/Pages/Default.aspx. A copy of the full policy is attached hereto as Exhibit A.

**ANSWER:** **Defendants admit that a full and accurate copy of District 86 Policy 4:20 is attached to the Complaint as Exhibit A. The policy speaks for itself.**

10. Knowing, on account of her familiarity with District 86 policy (being then the Chairperson of the Policy Committee), that distributing candidates' campaign materials clearly violates Policy 4:20, Claudia and her husband stopped to question the leafleters' right to be engaged in that activity on school property.

**ANSWER:** **Defendants admit that for a period of time Ms. Manley was the chair of the Policy Committee, that Ms. Manley initiated the confrontation with the leafleters, and that Ms. Manley and her husband stopped to question the leafleters' right to distribute political speech. Defendants deny the remaining allegations in Paragraph 10 of the Amended Complaint.**

11. The details of the resulting encounter are in dispute, but are not material to this Complaint. The essence of the dispute is whether Claudia's handling of the encounter with the leafleters was reasonable. (The circumstances of this encounter will hereafter be referred to as "the March 12th incident" or, simply "the incident".)

**ANSWER:** **Defendants admit that Plaintiffs and the leafleters have disputed certain details of the March 12 encounter. Defendants deny the remaining allegations in Paragraph 11 of the Amended Complaint.**

12.     At no time during the March 12th incident, did either Plaintiff identify Claudia as a Member of the Board of Education, or as Chairperson of the Policy Committee. At no time during the March 12th incident, did either Plaintiff represent that he or she was attempting to enforce either any Board Policy or provision of law. At no time during the March 12th incident, did either Plaintiff represent that he or she had authority either to enforce any Board Policy or provision of law. The limit of Plaintiff's "actions" was to advise the leafleters that their conduct violated District Policy, and at no time during the March 12th incident, did either Plaintiff make any attempt – or engage in any conduct which could reasonably be interpreted as an attempt – actually to enforce either any Board Policy or provision of law.

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12 of the Amended Complaint.**

13.     Certain individuals (not named in this lawsuit, and who identities are not yet known to plaintiffs) wrote to Dr. Law concerning the incident, and complaining of Claudia's conduct. Dr. Law chose to treat those e-mails as "complaints", and chose to have them resolved pursuant to the District 86 Uniform Grievance Procedure, found in District Policy 2:260, which is published at: http://www.hinsdale86.org/sb/bp/Pages/Default.aspx. A copy of the policy is attached hereto as Exhibit B.

**ANSWER:** **Defendants admit that several complaints concerning the March 12 incident were filed with the School District, that at least one of those complaints specifically invoked the Uniform Grievance Procedure provided in Board Policy 2:260, and that due to the fact**

that a Board member was named in the complaint, Dr. Law appointed a Complaint Manager as permitted by Board Policy 2:260. Defendants further admit that all of the complaints were referred to the Uniform Grievance Procedure for resolution, and that a true and correct copy of Board Policy 2:260 is attached to the Amended Complaint as Exhibit B. Defendants deny the remaining allegations in Paragraph 13 of the Amended Complaint.

14. Following the incident, plaintiffs received three phone messages from two individuals, who are related to one of the leafleters. Those messages were left on plaintiffs' home answering machine. The gist of the messages was that Claudia was to return the calls, or "the next step" would be taken.

ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14 of the Amended Complaint.

15. Plaintiffs did not return the phone calls.

ANSWER: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15 of the Amended Complaint.

16. Immediately thereafter, a publicity campaign ensued including (i) a petition for Claudia's resignation from the District 86 Board of Education, at change.org, (ii) several newspaper articles relating the leafleters' version of the incident, and (iii) a barrage of verbal attacks on Claudia at the March 23, April 13, and April 27, 2015, Board meetings during the Audience Communication portion of those meetings. Part of this campaign was an often-voiced demand for the publication of the results of a Policy 2:260 "investigation". Complete audio-video records are posted and fully accessible to the public, of all those Board meetings (including the Audience Communication portions), at the District 86 official website.

**ANSWER:** Upon information and belief, Defendants admit that a petition calling for Ms. Manley's resignation from the School Board was started by the student leafleter at Change.org. Defendants further admit that several newspaper articles have reported on the March 12 incident and the resulting controversy, and that members of the public have called upon Ms. Manley to resign during public comment period at school board meetings. Defendants admit that audio-video records of open-session Board meetings are posted on the District website and are accessible to the public. Defendants deny the remaining allegations in Paragraph 16 of the Amended Complaint.

17. The facts alleged in the preceding paragraph are circumstances implying the existence of a campaign of character assassination against Claudia, directed by persons currently unknown to plaintiffs. The Manleys deny the truth of the "facts" being spread pursuant to that campaign, and allege the ongoing campaign is injurious to their reputation and well-being.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that third persons are engaged in an ongoing "character assassination" campaign. Defendants deny the remaining allegations in Paragraph 17 of the Amended Complaint.

18. Dr. Law has a personal bias against Claudia (admitting in his Verified Answer, filed May 4, 2015, that he believes her to be "unprofessional" and "mean-spirited"), on account of positions Claudia has taken as a Board Member, and as President of the Board of Education (from July 2013 to May 2014) that have been critical of Dr. Law's administration, or with which he had political disagreement.

**ANSWER:** Defendants admit that Ms. Manley has been critical of Dr. Law and his administration during her tenure on the School Board; that every member of the School

Board has disagreed with Dr. Law at one time or another; and that Dr. Law has disapproved of Ms. Manley's unprofessional and mean-spirited behavior toward members of the School Board, District employees, and members of the community. **Defendants deny the remaining allegations in Paragraph 18 of the Amended Complaint.**

19.     Plaintiffs had cause to fear, therefore, that Policy 2:260 procedures – if instituted – would be abused by Dr. Law in that he would cause, or had already caused, the appointment of Complaint Manager that would share his bias against Claudia. Plaintiffs further feared the lack of due process and equal protection afforded by Policy 2:260 would lead to "findings" which vary substantially from truth, and which would, therefore, add to the character assassination from which plaintiffs have suffered.

**ANSWER:     Defendants deny the allegations in Paragraph 19 of the Amended Complaint.**

20.     Defendants intended, knew, or should have known, that the results of any "investigation" pursuant to Policy 2:260 would be made known to the general public through Press reports, social media, and other means being employed by Plaintiffs' political opponents. Further, Defendants knew, or should have known, that if those results included false statements, they would be added to the campaign of character assassination (see ¶¶ 16 & 17, *ante*), being injurious to Plaintiffs' reputation and well-being.

**ANSWER:     Defendants deny the allegations in Paragraph 20 of the Amended Complaint. Answering further, Defendants state that the Uniform Grievance Procedure investigation only pertained to Plaintiff Claudia Manley, not Plaintiff Noel Manley.**

**MATTERS ARISING AFTER THE FILING OF THE
ORIGINAL VERIFIED COMPLAINT**

21.     On May 4, 2015, the parties appeared in Court on Plaintiffs' Motion for Temporary Restraining Order based on the facts alleged in the General Allegations of the original Verified Complaint herein.  That motion was denied.

**ANSWER:     Defendants admit the allegations in Paragraph 21 of the Amended Complaint.**

**The 2:260 Litman "Investigation"**

22.     On May 5, 2015, Plaintiffs contacted District Administration and made appointments to meet with Dr. Jeffrey Litman (Hereinafter "Litman"), the scope of whose responsibility is not known to Plaintiffs, and has been called an "investigator" or an "independent reviewer".

**ANSWER:     Defendants deny that the scope of Dr. Litman's responsibility is "not known" to Plaintiffs.  Defendants admit the remaining allegations in Paragraph 22 of the Amended Complaint.**

23.     Both Plaintiffs met with Litman May 7, 2015; Plaintiff Noel Manley in the Afternoon, and Claudia Manley in the evening.

**ANSWER:     Upon information and belief, Defendants admit the allegations in Paragraph 23 of the Amended Complaint.**

24.     In response to Plaintiffs' oral inquiry, Litman stated that he was given discretion to determine the methodology of his inquiry into the facts of the March 12th incident.  He introduced himself as a retired school superintendent, who had, since retiring, served on occasion as a hearing officer.  On information and belief, Litman has served as a hearing officer for the District in contested residency cases.

**ANSWER:** Defendants admit that Dr. Litman has served as a hearing officer for the District in contested student residency cases pursuant to approval by the Board. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 24 of the Amended Complaint.

25.     Plaintiffs have no knowledge of the process by which Litman was engaged in connection with this incident (except that attorney Terry Hodges was involved, *see* ¶ 28.c, *post)*. Plaintiffs lodged written objection to appointment of any person connected with either Defendant, but there was never any ruling issued on that objection; nor was it ever even acknowledged.

**ANSWER:** Defendants admit that Plaintiffs' attorney objected to any person appointed by Dr. Law pursuant to Board Policy 2:260 participating in the UGP process. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 25 of the Amended Complaint.

26.     Litman said he had determined to talk to the four individuals primarily involved; that he would listen to their statements and take notes. He did not record the interviews; he did not talk to any other witnesses (he neither sought names of other witnesses, nor did he interview witnesses whose names he was given); he did not review outside statements made by any witnesses. Plaintiffs tendered certain documents to Litman, but have no knowledge whether they were ever considered. Plaintiff has no direct knowledge of any "investigative" effort made by Litman, except they believe he did, in fact, listen to (and make notes of) statements of the four persons most involved in the March 12th event (*viz.*, the two leafleters, and Plaintiffs).

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26 of the Amended Complaint.

27.      A "modified" summary of Litman's report was read during the May 18th Board of Education meeting (*see*, ¶¶ 19-21, *post*), but Plaintiffs do not have a copy of the document read; nor have they been given a copy of the full report.  According to what was read, Litman did say he watched the security video of the incident, but Plaintiffs believe (from what was read during the May 18th meeting) that Litman's recounting, of the events depicted was not completely accurate (while Plaintiffs now appear to have the Litman Report, they do not have a formally verified copy of the security video – which has been requested in pending discovery).

**ANSWER:     Defendants admit that Plaintiffs possess a copy of Dr. Litman's report, and that a summary of the report was read during the May 18 Board meeting.  Answering further, Defendants state that Plaintiff Noel Manley has been provided a copy of the security video.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 27 of the Amended Complaint.**

28.      Litman concluded (erroneously calling it a "finding") that Plaintiff violated District Policy (specifically, Policy 8:30).  Not only does this conclusion rest on a flawed factual investigation, it demonstrates incompetence properly to read and interpret that Policy – which makes a marked distinction between "expectations" and proscriptions – a distinction to which Litman was clearly oblivious.

**ANSWER:     Defendants admit that Dr. Litman's report found that Ms. Manley failed to treat the student leafleter with courtesy and respect in violation of Board Policy 8:30 during the March 12 encounter.  Defendants deny the remaining allegations in Paragraph 28 of the Amended Complaint.**

29.      Litman made "findings" that are highly subjective, gratuitously used, and have no meaning within the context of Litman's assigned responsibility.  Those "findings" appear to be

based on the complainants' perception of remarks made during the incident; there is no finding relating to the intent of the speaker.

**ANSWER:** **Defendants deny the allegations in Paragraph 29 of the Amended Complaint.**

30. Litman's analysis was further flawed in that he failed to find the leafleters' presence on school property to violate District policy; in fact, he failed to address that issue at all.

**ANSWER:** **Defendants deny the allegations in Paragraph 30 of the Amended Complaint.**

**Litman's Report Goes to the Board**

31. On May 11th, the District Board of Education met in Special Meeting, and during the "President's Report" segment of the meeting, Board President Kay Gallo purported to create a Uniform Grievance Procedure Committee, and appointed five Board Members thereto: all Board Members except Plaintiff Claudia Manley. Three of the Committee members constituted the Education First slate supported by the leafleters. In fact, one of the Committee Members participated on March 13, 2014 leafleting on District property. Gallo asserted that she created the committee, and determined its membership, upon the advice of counsel Terry Hodges, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP (both Defendants' counsel of record in this case, appearance filed May 4, 2015). A complete transcript of that portion of the meeting is attached hereto as Exhibit A (a video recording of the meeting can be found at: http://www.hinsdale86.org/sb/Video%2011%202015%20Special%20Meeting.aspx)

**ANSWER:** **Defendants lack knowledge or information sufficient to form a belief about the truth of the foundation, creation, or accuracy of the "transcript" attached as Exhibit A; answering further, the video recording referenced in Paragraph 31 speaks for itself. Upon information and belief, Defendants admit that Board member Bill Carpenter was present**

**at Hinsdale South on March 13, 2015. Defendants admit the remaining allegations in Paragraph 31 of the Amended Complaint.**

32. That committee was improperly created. Board Policy 2:150 explicitly provides that the Board – not the President (with or without the advice of counsel) – creates all committees as deemed necessary. A complete copy of Board Policy 2:150 is attached hereto as Exhibit D.

**ANSWER: Defendants admit that a true and accurate copy of Board Policy 2:150 is attached as Exhibit D to the Amended Complaint, and speaks for itself. Defendants deny the remaining allegations in Paragraph 32 of the Amended Complaint.**

33. Further, the May 11th transcript (Exhibit C hereto, at page one), makes clear Gallo discussed some aspects of the committee's operation/function with some (but not all) Board Members in advance of that meeting, in probable violation of the Illinois Open Meetings Act (5 ILCS 120).

**ANSWER: Defendants deny the allegations in Paragraph 33 of the Amended Complaint.**

34. At some time between May 11th and May 18th, 2015, Litman completed his report, and forwarded it to the District.

**ANSWER: Defendants admit the allegations in Paragraph 34 of the Amended Complaint.**

35. At four p.m. May 18, 2015, the five individuals designated as the "Uniform Grievance Procedure" committee met, and – over Plaintiffs' objection that the committee was improperly authorized – opened, read, debated the Litman report in closed session. No Member of the "committee" was permitted to see the report prior to that meeting. The security video was also viewed by Members during that closed session. One Member had seen the video before that

meeting; another, Edward Corcoran asked to see it before the meeting, and was refused by District Administration. Mr. Corcoran was told his request was denied on the advice of counsel, Terry Hodges. Plaintiffs were not afforded any opportunity to present argument, or otherwise participate in consideration of the Litman report.

**ANSWER:** **Defendants deny that the Plaintiffs made any objection to the formation of the Uniform Grievance Procedure committee. Defendants deny that the Plaintiffs were not afforded any opportunity to present argument; answering further, Defendants state that both Plaintiffs were afforded the opportunity to meet with Dr. Litman directly, and (upon information and belief) to provide Dr. Litman with all information, argument, and other input that they wished to provide. Defendants admit the remaining allegations in Paragraph 35 of the Amended Complaint.**

36. On information and belief, the Litman report tenders "findings" which are clearly erroneous. Further, on information and belief, Litman reports that complainants related facts during their interviews with Litman which were at variance with facts related in prior statements (for example, to news reporters and in a post on Change.org). Plaintiffs were never confronted with any "amended" versions of complainants' stories, nor given any opportunity to rebut those new stories. Also on information and belief, Litman did not question or challenge the revised factual accounts, but simply accepted them as true. Plaintiffs have not been permitted to see the Litman report, and, therefore, make the allegations of this paragraph on information and belief.

**ANSWER:** **Defendants deny the allegations in Paragraph 36 of the Amended Complaint.**

37. Upon re-convening in open session, the "committee", over Mr. Corcoran's objection, voted to recommend that the full Board (*i.e.*, the "committee" members plus Plaintiff

Claudia Manley), accept Litman's report and all its findings "as modified". There was no explanation or definition of the modification(s).

**ANSWER:** **Defendants admit that on May 18, 2015, the Committee voted to recommend that the School Board accept Dr. Litman's findings as modified, and further state that the modification was marked in brackets on the report. Defendants deny the remaining allegations in Paragraph 37 of the Amended Complaint.**

38. At seven p.m. May 18, 2015, the full Board met. The agenda included an action item regarding the Uniform Grievance Procedure. Over the "Nay" votes of Members Corcoran and Manley, the "committee" recommendation was accepted on roll-call vote.

**ANSWER:** **Defendants state that on May 18, 2015, the meeting was called to order at 7:11 p.m. Defendants admit the remaining allegations in Paragraph 38 of the Amended Complaint.**

**Punitive Action.**

39. The Board voted, on the "committee's" recommendation to accept the Litman report and findings, but there was no motion, or vote, to take any further action.

**ANSWER:** **Defendants admit the allegations in Paragraph 39 of the Amended Complaint.**

40. Notwithstanding the lack of Board authorization for taking any action on the report, Board President Gallo proceeded forthwith – without notice to anyone – to publish the "modified" conclusion to Litman's report, by reading it in open session.

**ANSWER:** **Defendants admit that Ms. Gallo described Dr. Litman's findings for the benefit of the public attending the open session of the Board meeting. Defendants further**

state that no such "Board authorization" was necessary for doing so. Defendants deny the remaining allegations in Paragraph 40 of the Amended Complaint.

41.     The report excerpt read erroneously concludes (apparent, as a "finding"), that Plaintiff Claudia Manley violated District Policy during the March 12th incident; thus, the wrongful act Defendants intended, knew, or should have known, would cause damage, and that Plaintiffs hoped to prevent by moving for temporary relief, was done (*see, ¶* 20, *ante*).

**ANSWER:     Defendants admit that Dr. Litman found that Ms. Manley violated Board Policy 8:30 during the March 12 incident. Defendants deny the allegations in Paragraph 41 of the Amended Complaint.**

42.     At some time, not exactly known to Plaintiffs, notice was posted at the District website that the Uniform Grievance Process Committee would meet at six p.m. June 1, 2015. By the express terms of District Policy 2:150 (Exhibit B hereto), that "committee" – insofar as it existed at all – automatically dissolved upon the presentation of its recommendation to the Board on May 18th. Plaintiffs know of no action taken to continue that committee's existence, nor to ratify its existence *ab initio*.

**ANSWER:     Defendants admit that notice of the UGP Committee meeting was posted on the District website. Defendants deny the remaining allegations in Paragraph 42 of the Amended Complaint.**

43.     At the outset of the June 1st special meeting (with four members present), Mrs. Gallo alluded to three draft letters she circulated to the committee. These were identified as drafts of a letter to be addressed to Claudia, pursuant to the Policy 2:260 procedure. Plaintiffs have not seen any of those documents. During the meeting, the draft was discussed, and a vote

was taken (3-1, with Mr. Corcoran dissenting) to recommend the full Board approve the final version for delivery to Claudia.

**ANSWER:    Defendants lack knowledge or information sufficient to form a belief whether the Plaintiffs have seen any of the documents referenced.  Defendants admit the remaining allegations in Paragraph 43 of the Amended Complaint.**

44.    At seven p.m. June 1, 2015, the Board met and, pursuant to published agenda, considered the recommendation of the "committee".  Over the objection of Mr. Corcoran, the "committee" recommendation was approved by a vote of (3-1-1, the new member abstaining).

**ANSWER**:    **Defendants admit the allegations in Paragraph 44 of the Amended Complaint.**

45.    On June 8, 2015, Plaintiff Claudia Manley received a letter admonishing her for (1) violating Board Policy 8:30 and (2) over-stepping her authority as a Board Member by attempting to enforce Board Policy.  The letter's statements are false in both respects; in fact, Plaintiffs are unaware that Litman made any findings that Claudia made an attempt to act as a Board Member during the March 12th incident.  Plaintiffs have no knowledge whether that letter is in the form approved by the "committee" on June 1, 2015, and later that date by a divided Board of Education.

**ANSWER:    Defendants admit that by letter to Ms. Manley dated June 9, 2015, the Board addressed the report submitted by the Independent Reviewer charged with investigating the UGP complaints submitted by the leafleters.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation regarding when Ms. Manley received the letter.  Defendants deny the remaining allegations in Paragraph 45 of the Amended Complaint.**

**Motive and Opportunity**

46.     Defendants (who, as of the preparation of this pleading, have joint legal representation, and have filed joint submissions in this case), in essence, admit Defendant Law has a personal bias against Claudia (*see*, Verified Answer to ¶ 17 of Plaintiff's original Verified Complaint).

**ANSWER:     Defendants deny the allegations in Paragraph 46 of the Amended Complaint.**

47.     Defendant Law has taken a very defensive position regarding his actions relating to the incident (being primarily to opine that the leafleting activity alleged herein did not violate District policy).  In one communication to the Board, he went so far as to write that criticism of his actions suggested he was being set up for termination, and that that concern was prompted by the anecdotal advice tendered by his network of fellow superintendents.

**ANSWER:     Defendants deny the allegations in Paragraph 46 of the Amended Complaint. Answering further, Defendant Law states that it was not criticism of his actions that led him to suggest that the groundwork was being laid to terminate him, it was the insistence that he was at fault for the whole incident.**

48.     The District's retained counsel, Terry Hodges, has been a key figure throughout this entire incident:

        a.     As annually retained counsel, she has unfettered contact with Defendant Law (who has discretion, under District Policy 2:160, Exhibit E hereto, for referring billable matters to counsel).

        b.     She has unfettered contact with Board President Kay Gallo (*see*, Policy 2:160, *and see*, Exhibit C hereto.).

c.   She was consulted during the day on March 13, 2015, by Defendant Law, concerning the interpretation of Policy 4:20, and – according to Law – tendered to him advice that Policy 4:20 did not preclude the leafleters' activity.

d.   She either selected, or was instrumental in the selection of, Litman (in whatever function he served).

e.   She (along with Dr. Law) was in contact with Litman in his previous role as hearing officer in District residency cases, and she continued her contact with him through the duration of the Uniform Grievance Procedure matter.

f.   She served, herself, as "Complaint Manager" in related Uniform Grievance Procedure cases (in which it was alleged the leafleters violated District Policy 4:20), notwithstanding that it was Hodges, herself, that provided Law with legal advice that the leafleting was permissible (or not prohibited) under District policy.

g.   She was responsible for, or instrumental in, ruling that Mr. Corcoran's request to view the security video, prior to meeting of the "special" Uniform Grievance Procedure Committee May 18, 2015, should be denied.

**ANSWER:   Defendants admit that Ms. Hodges serves as counsel to the Board and engaged in communications with the Board and with Dr. Law for the purposes of providing legal advice, the details of which are confidential pursuant to the attorney-client privilege and therefore need not be answered.  Defendants further admit that Ms. Hodges, not Dr.**

**Law, has had communications with Dr. Litman, and that Ms. Hodges acted as Complaint Manager on other complaints. Defendants deny the remaining allegations in Paragraph 48 of the Amended Complaint.**

49.     Renewal of Mrs. Hodges' firm's annual contract with the Board depends upon the vote of a Board majority (*see*, Board Policy 2:160, Exhibit E hereto).

**ANSWER:     Defendants deny that Ms. Hodges or her firm has an "annual contract" with the Board. Answering further, Defendants state that Ms. Hodges and her firm are retained counsel, serving at the pleasure of the Board, subject to ongoing review. Defendants admit the remaining allegations in Paragraph 49 of the Amended Complaint.**

50.     Litman was engaged to serve in this matter over Plaintiffs' general objection to anyone being appointed in any manner suggesting impropriety – an objection which was never even acknowledged (*see* ¶ 5, *ante*).   As alleged elsewhere, Litman has been engaged by the District on previous occasions, and is, or should be, aware that the District is likely to continue needing hearing officers in disputed residency cases.

**ANSWER:     Defendants admit that Dr. Litman has served as hearing officer in disputed residency cases for the Board and that Plaintiff's attorney objected to his appointment. Defendants deny the remaining allegations in Paragraph 50 of the Amended Complaint.**

51.     In short, the opportunities for ex parte communication between Defendant Law, Defendant's Board President Kay Gallo, and Litman (both through the medium of Terry Hodges, or otherwise) abounded.   Potential, if not actual, conflicts of personal interest and the need for impartiality abounded.   Those opportunities give the appearance of impropriety, and could easily have been avoided by having the independent fact-finder appointed by the American Arbitration

Association, the DuPage County Bar Association, or some other established, independent dispute-resolution organization.

**ANSWER:     Defendants deny the allegations in Paragraph 51 of the Amended Complaint.**

### COUNT I – FOR DECLARATION THAT POLICY 2:260 IS INVALID
### AND UNENFORCEABLE AS APPLIED, AND FOR OTHER
### APPROPRIATE RELIEF

1-51.    The General Allegations, and Matters Arising After the Filing of the Original Verified Complaint, paragraphs 1-51, above are incorporated herein by reference.

**ANSWER:     Defendants incorporate and re-allege their answers to Paragraphs 1-51 of the Amended Complaint.**

52.    By its express provisions, the grievance procedure of Policy 2:260 does not apply. The circumstances of the incident do not fall within the scope of the specifically enumerated disputes that procedure is established to resolve.

**ANSWER:     Defendants deny the allegations in Paragraph 52 of the Amended Complaint.**

53.    The procedure is also clearly not designed for these types of proceedings, due to its failure to make any provisions – whatsoever – for the participation of a "respondent" or "defendant", or any party adverse to the complaining party.

**ANSWER:     Defendants deny the allegations in Paragraph 53 of the Amended Complaint.**

54.     The procedure is without purpose – there is no provision for a remedy; it provides only for submission of "findings" – and a "decision" by the Superintendent – but no specification of the scope of that decision is provided.

**ANSWER:     Defendants deny the allegations in Paragraph 54 of the Amended Complaint.**

55.    Due to the circumstances alleged in the preceding two paragraphs, it is evident that the Policy 2:260 is devoid of safeguards of a party's procedural rights, such as (but not

limited to): (i) right to an impartial arbiter (Dr. Law purporting to have the right to name Complaint Managers under the policy), (ii) right to be advised of the nature of the complaint, or even the identity of the complainant; (iii) right to respond to the complaint, (iv) right to discover the evidence being introduced or considered, (v) right to object to evidence, (vi) right to confront witnesses, (vii) right to appeal, etc. In fact, during the course of the Litman "investigation", Plaintiffs were afforded none of those rights, despite their making express requests therefor.

**ANSWER:** **Defendants deny the allegations in Paragraph 55 of the Amended Complaint.**

56. The Manleys had further reason to believe any internal District proceeding would not be conducted in good faith because they made demand, on April 28, 2015, that the District comply with the Policy 2:260 requirement that "The Complaint Manager will attempt to resolve complaints without resorting to this grievance procedure". Plaintiffs received no response to their demand.

**ANSWER:** **Defendants deny the allegations in Paragraph 56 of the Amended Complaint.**

57. In the actual event, the Manleys' fears were well-founded, as the entire process, purportedly conducted pursuant to Policy 2:260, did in fact fail to conform to formal Board Policy, and other provisions of law (as alleged in the foregoing paragraphs). Further, there is no provision in the Illinois School Code, 105 ILCS 5/, for School Districts to resolve disputes, without the consent of both parties, involving complaints against non-employee adults. Further, Article VI of the Constitution of the State of Illinois provides for governmental resolution of disputes, and nowhere in Article VI is there a provision for doing so by local school districts.

**ANSWER:** **Paragraph 57 of the Amended Complaint contains arguments of law, to which no answer is required. Defendants deny the remaining allegations in Paragraph 57 of the Amended Complaint.**

58.     Consideration of procedures for Policy 2:260 matters was scheduled for action at the regular monthly Board of Education meeting on April 27, 2015; however, three Members walked out of the meeting leaving the Board without a quorum – and preventing the taking of any action.   Although a stay of proceedings was observed pending the April 27th meeting, Defendants did, after that date, cause Litman's "investigation" to proceed.

**ANSWER:    Defendants admit the allegations of Paragraph 58 of the Amended Complaint.  Answering further, Defendants state that the Board members left the meeting during a hearing concerning administrative costs; that the School board members who walked out of the April 27 meeting cited an unrelated reason (concerning resolutions in response to District referendum questions) for leaving the meeting; and that the exact same agenda item concerning the March 12 complaints was on the agenda April 6, and fully discussed in closed session by a quorum of the School Board, April 13.**

59.     Policy 2:260 should not have been employed to resolve any dispute or controversy over the March 12, 2015 incident.  Further, Defendants' [sic] knew, or should have known, institution of that process would not only violate plaintiffs' rights, but would add to the campaign of character assassination, causing Plaintiffs immediate and irreparable harm to their reputations, and to their mental health and personal well-being.

**ANSWER:    Defendants deny the allegations in Paragraph 59 of the Amended Complaint.**

60.     Plaintiffs have suffered to their reputations and to their right to be free from intimidation, harassment, bullying, defamation and like injury.

**ANSWER:    Defendants deny the allegations in Paragraph 60 of the Amended Complaint.**

**COUNT II – FOR DECLARATION THAT POLICY 4:20 CLEARLY
PROHIBITS DISTRIBUTION OF POLITICAL CAMPAIGN
MATERIALS ON DISTRICT PROPERTY**

1-60.    The allegations of paragraphs 1-60 of Count I are incorporated herein by reference.

**ANSWER:     Defendants incorporate and re-allege their answers to Paragraphs 1-60 of the Amended Complaint.**

61.    After the Court denied declaratory and injunctive relief pursuant to the prayer for relief in Count I, Defendants caused various proceedings, relating to the March 12th incident, to move forward, purportedly pursuant to District 86 Board Policy 2:260, as alleged heretofore in ¶¶ 22-51.

**ANSWER:     Defendants incorporate their various answers to Paragraphs 22-51 of the Amended Complaint.  Defendants admit the remaining allegations in Paragraph 61 of the Amended Complaint.  Answering further, Defendants state that the proceedings were conducted by Dr. Litman, not by the Defendants.**

62.    Assessment of the lawfulness of the leafleters' conduct should have been central to resolution of all pending complaints.  If the conduct violated District Policy, the leafleters were trespassers, and should, on March 12, 2015, have expected to be regarded as such by any member of the public (thus, the leafleters' expectations should be the same as those of someone on school property with a can of spray-paint, engaged in acts of vandalism).

**ANSWER:     Defendants deny the allegations in Paragraph 62 of the Amended Complaint.**

63.    Defendant Dr. Law was first contacted at a time unknown to the Manleys, either by the leafleters, or by unknown persons acting in concert with the leafleters, whereupon Dr. Law advised that distribution of campaign materials was permitted (or, perhaps, "not prohibited") on school grounds.

**ANSWER:** **Defendants admit that Dr. Law received complaints from each leafleter regarding Ms. Manley's conduct of March 12, 2015, and advised the student leafleter that her distribution of campaign materials was not prohibited by Board policy. Defendants deny the remaining allegations in Paragraph 63 of the Amended Complaint.**

64. It is known that one of the leafleters contacted Dr. Law during the day on Friday, March 13, 2015, but it is unknown whether that was the first contact (*see*, the preceding paragraph). Dr. Law, despite having specifically been referred to Policy 4:20, responded to the Friday e-mail saying distribution of campaign materials was permitted on school grounds. By then, Dr. Law knew Claudia had been involved in an incident the previous evening, and thus knew he was taking an interpretive position contrary to the position of the Board's Policy Committee Chairperson, and someone, it is believed, against whom he harbors a personal bias (see ¶ 18, *ante*).

**ANSWER:** **Defendants admit that one of the leafleters contacted Dr. Law on March 13, 2015, and that Dr. Law advised the leafleter that Board policy did not prohibit the distribution of campaign materials by the leafleters. Defendants deny the remaining allegations in Paragraph 64 of the Amended Complaint.**

65. When challenged on his "interpretation" of Policy 4:20, Dr. Law claimed it was based on "past practice", but has been unable to cite any instance of past practice regarding Policy 4:20 and its applicability to campaign materials. In fact, Plaintiffs are unaware of Dr. Law's having been able to cite any past application – in any circumstances – of Policy 4:20, subparagraphs 2 f. & 2 g. of the General Advertising Provisions, Prohibited Advertising.

**ANSWER:** **Defendants admit that the only prior use of Policy 4:20 known to Dr. Law concerned the placement of commercial advertisements by local businesses upon District**

athletic facilities. **Defendants deny the remaining allegations in Paragraph 65 of the Amended Complaint.**

66.     Dr. Law's reference to "past practice" is, in any event, of no consequence, as the Policy is clear and its meaning and intent need no reference to "past practice" or any other extrinsic source.

**ANSWER:     Defendants deny the allegations in Paragraph 66 of the Amended Complaint.**

**FIRST AFFIRMATIVE DEFENSE**
**QUALIFIED IMMUNITY – DEFENDANT LAW**

Dr. Law is immune from liability from the allegations in the Amended Complaint pursuant to the doctrine of qualified immunity.

WHEREFORE, Defendants, DR. BRUCE LAW, and BOARD OF EDUCATION OF HINSDALE TOWNSHIP HIGH SCHOOL DISTRICT 86, deny that the Plaintiffs are entitled to the relief sought in their Verified Amended Complaint, or to any relief at all, and pray for judgment in their behalf plus costs.

Respectfully submitted,

DR. BRUCE LAW and BOARD OF EDUCATION OF HINSDALE TOWNSHIP HIGH SCHOOL DISTRICT NO. 86,

By:     /s/ Robert E. Swain
        One of the Attorneys for Defendants

Robert E. Swain (#6256749)
Babak Bakhtiari (#6291376)
HODGES, LOIZZI, EISENHAMMER,
    RODICK & KOHN LLP
3030 Salt Creek Lane, Suite 202
Arlington Heights, IL 60005
(847) 670-9000
(847) 670-7334 (Facsimile)

## DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing information is true and correct.

Executed on:

9/2/15

Date

By: _____

Dr. Bruce Law
Superintendent, Hinsdale Township
High School District 86

## CERTIFICATE OF SERVICE

Robert E. Swain, an attorney, certifies that on September 2, 2015, a true and correct copy of the foregoing **Verified Answer to Plaintiffs' Verified Amended Complaint** was electronically filed with the Clerk of the U.S. District Court of the Northern District of Illinois, Eastern Division, via its CM/ECF System and was electronically served to each person listed below:

Bruce Davidson
733 North Oak
Hinsdale, IL 60521
akivida@aol.com


By:  /s/ Robert E. Swain
       One of the Attorneys for Defendants

Robert E. Swain (#6256749)
Babak Bakhtiari (#6291376)
HODGES, LOIZZI, EISENHAMMER,
   RODICK & KOHN LLP
3030 Salt Creek Lane, Suite 202
Arlington Heights, IL 60005
(847) 670-9000
(847) 670-7334 (Facsimile)

310009_7